■ BLUEBIRD PARTNERS, L.P., Appellant, v FIRST FIDELITY BANK, N.A., NEW JERSEY, Respondent, et al., Defendants. [784 NYS2d 479]—

Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered July 21, 2003, which granted the motion of defendant First Fidelity Bank, N.A., New Jersey, to set aside the $54 million jury verdict and dismiss the complaint, unanimously reversed, on the law, without costs, the motion denied and the verdict reinstated. Appeal from order, same court and Justice, entered July 14, 2003, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiff is a secured holder of debt certificates issued by Continental Airlines pursuant to a trust indenture under which the company's aircraft and parts served as collateral. Defendant First Fidelity was the indenture trustee through December 24, 1991. Continental filed for bankruptcy on December 3, 1990.

In this action for breach of contract, breach of fiduciary duty, negligence and malpractice, plaintiff claims that defendant First Fidelity, while serving as indenture trustee, failed to take the necessary action to protect the value of the collateral once Continental filed for bankruptcy, and that the decline in the value of collateral during the pendency of the bankruptcy caused it millions of dollars of losses. Consequently, one of the central issues presented to the jury was whether First Fidelity had made the appropriate motions at the appropriate time to protect the collateral from an erosion of its marketability and value.

At trial, the jury found that First Fidelity's failure to timely move to lift the bankruptcy stay was a substantial factor in causing a decline in the value of the collateral, that Bluebird's loss was $54 million, and that First Fidelity was 61% responsible for the loss.

In its motion to set aside the verdict, First Fidelity argued that the failure to move to lift the stay in the initial June 28,

1991 motion for adequate protection was insufficient to establish causation, because any such motion would not have changed the Bankruptcy Court's initial determination. It pointed out that the Bankruptcy Court denied the motion for adequate protection, ruling that in any event such relief could be awarded only from the date of the motion, and that a lift stay motion was not needed when seeking it.

The trial court granted First Fidelity's motion and set aside the verdict, holding that the evidence was insufficient to support the verdict, because the only evidence on point, the testimony of plaintiff's expert, Claude Montgomery, an experienced bankruptcy attorney, failed to establish the claim. The court characterized Montgomery's testimony as merely asserting that the pendency of a lift stay motion might give a creditor some leverage over a debtor in negotiations over the collateral. The court went on to conclude that no other evidence was proffered regarding the actual effect of the delay in filing the lift stay motion on the debtor/creditor relationship in this case, and that the focus was upon guessing the motion's potential influence upon the Bankruptcy Court.

The primary issue before us now is therefore whether the evidence was sufficient to support the verdict that First Fidelity's inaction caused Bluebird's financial loss.

We disagree with the trial court's assessment of the evidence. Viewing it in the light most favorable to Bluebird, we conclude that there is a valid line of reasoning and permissible inferences that could have rationally led the jury to the conclusion it reached on the basis of this record (*see e.g. Chevere v Hyundai Motor Co.*, 4 AD3d 226, 227-228 [2004], citing *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

Contrary to the trial court's assessment, plaintiff's expert, Montgomery, did not testify only about the leverage to be obtained by making a lift stay motion, or the legal import of coupling a lift stay motion with one for adequate protection. Rather, he testified as to the *prudence*, from a business and practical standpoint, of moving to lift the stay, even if not a legal requirement. Indeed, the court's charge to the jury, based upon this Court's initial decision in this case (*see Bluebird Partners v First Fid. Bank, N.A., N.J.*, 248 AD2d 219 [1998], *lv dismissed* 92 NY2d 946 [1998]), framed the question as whether the trustee's conduct was "prudent."

Montgomery explained that the proper way to protect against declines in collateral value is to move to lift the stay and, in the alternative, to move for adequate protection, and that generally, adequate protection consists of directing the debtor to provide

cash or additional security in the form of a lien on another asset. As he elaborated, if there is no cash or other asset, so adequate protection cannot be provided, that would be sufficient cause for the court to lift the automatic stay and allow the secured creditor to seize the collateral and sell it on the open market.

Montgomery also asserted that a proper motion would have been granted, based upon: (1) his review of the appraisal evidence submitted in a very recent similar application in the Eastern bankruptcy, (2) his own unchallenged research that adequate protection motions are successful when coupled with lift stay motions, and (3) the body of opinions on lift stay and adequate protection motions.

Montgomery went on to explain that the absence of case law requiring a lift stay motion along with one for adequate protection, prior to the Bankruptcy Court's second opinion, did not alter his view that a creditor failing to also move to lift the stay when moving for adequate protection was taking an undue risk. This was because his research showed that motions for adequate protection were successful only when accompanied by lift stay motions. Notably, even the expert witness who testified on behalf of First Fidelity conceded that a lawyer should not risk neglecting to make a lift stay motion.

The foregoing testimony was sufficient to permit the jury's finding regarding causation. We reject First Fidelity's contention that the evidence was speculative as to the likely success of a lift stay motion; the evidence was no more speculative than in a legal malpractice trial, where the proponent must show that the client would have prevailed in the underlying action.

The determination of damages was properly based upon evidence regarding the decline in the value of the collateral; testimony regarding bond prices was properly excluded. Nor does the termination of First Fidelity as trustee immunize it from liability for damages that continued to accrue afterward as a result of its conduct or inaction while it still held that position (see LNC Invs., Inc. v First Fid. Bank, 1997 WL 528283, 1997 US Dist LEXIS 12858 [SD NY, Aug. 27, 1997]).

We also reject defendant's alternative grounds for setting aside the verdict and dismissing the complaint. The defense of champerty presented a factual issue, and the jury's rejection of it was supported by the evidence. The charge in this regard was proper, but even if the charge should have referred to plaintiff's "sole or primary purpose" rather than its "sole purpose," the testimony that the jury clearly accepted was that a lawsuit was neither Bluebird's sole nor its primary purpose in acquiring the certificates.

We have considered and rejected First Fidelity's remaining arguments claiming various trial errors. Concur—Tom, J.P., Saxe, Ellerin, Williams and Gonzalez, JJ.