(March 17, 1998)

■ BLUEBIRD PARTNERS, L.P., Appellant, v FIRST FIDELITY BANK, N. A., NEW JERSEY, et al., Respondents. (Appeal No. 1.) BLUEBIRD PARTNERS, L.P., Appellant-Respondent, v BANK OF NEW YORK et al., Respondents-Appellants, and FIRST FIDELITY BANK, N. A., NEW JERSEY, et al., Respondents. (Appeal No. 2.) BLUEBIRD PARTNERS, L.P., Respondent, v BANK OF NEW YORK et al., Appellants. (Appeal No. 3.) [671 NYS2d 7] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered January 6, 1997, which granted defendants' motion to dismiss the complaint in *Bluebird Partners v First Fid. Bank* (the FFB action) in its entirety, unanimously modified, on the law, to reinstate the first, second and third causes of action, and otherwise affirmed, without costs.

Order, same court and Justice, entered January 8, 1997, which granted defendants' motion to dismiss the first, second, third and fourth causes of action in *Bluebird Partners v Bank of N. Y.* (the BNY action), and denied the motion of defendants Bank of New York, NationsBank of Tennessee, Constellation Bank and CoreStates New Jersey National Bank to dismiss the seventh cause of action, unanimously modified, on the law, to dismiss the seventh cause of action as well, and otherwise affirmed, without costs.

Order, same court and Justice, entered June 20, 1997, which affirmed a Referee's discovery determination in the BNY action, compelling production of documents by Bank of New York notwithstanding a claim of privilege, unanimously reversed, on the law, without costs, the motion to affirm denied, and the matter remanded for further proceedings to determine appropriate redactions to the subject bills, in accordance with the decision herein.

These three appeals arise from two lawsuits by a secured creditor against the present and former trustees of collateral security interests in the estate of the bankrupt Continental Airlines, and against the trustees' present and former attorneys. The suits allege breach of fiduciary duty, breach of contract, negligence and malpractice in the manner in which defendants failed to protect the secured interests of plaintiff and its predecessors.

Plaintiff is a successor in possession of debt certificates in

the face amount of more than $100 million. These certificates were among a first and second series issued by Continental, under a 1987 Secured Equipment Indenture and Lease Agreement, for loans secured by aircraft equipment and engines. The collateral trustee was defendant First Fidelity Bank, N. A., New Jersey (since succeeded by defendant NationsBank of Tennessee, and subsequently by defendant Bank of New York). The trustees for the two series of certificates in question were defendant Midlantic National Bank (since succeeded by defendant Constellation Bank and subsequently by defendant Core-States New Jersey National Bank) and defendant United Jersey Bank (since succeeded by nonparty Harris Trust and Savings Bank).[1] In the event of default, the certificate holders would have the status of secured creditors.

Continental did default, in 1990, by filing a chapter 11 petition for reorganization in Bankruptcy Court in Delaware. The three original trustees mentioned above hired their own separate law firms, defendants Riker Danzig Scherer Hyland & Perretti, Crummy Del Deo Dolan Griffinger & Vecchione, and Wolff & Samson, respectively, to represent their interests in the debtor's bankruptcy proceedings.

The filing of a voluntary petition in bankruptcy automatically stays all efforts at collection or enforcement against the debtor (11 USC § 362 [a]). Faced with a sudden inability to protect, manage or liquidate collateral that could rapidly depreciate,[2] the collateral trustee joined with numerous other creditors, two and a half months after the filing of the petition, in moving for "adequate protection" for their collateral interest in the bankruptcy estate (11 USC § 363 [e]).

Lack of adequate protection is one of the grounds for seeking to terminate or modify the automatic stay in bankruptcy (11 USC § 362 [d]), but, for some reason, the motion for adequate protection failed to ask for lifting of the stay, as is often standard procedure. The collateral trustee withdrew from the motion shortly thereafter, and in June 1991, joined by the certificate trustees, filed a new motion with a request for *"modification of the automatic stay* to provide for adequate protection" (emphasis added). During the pendency of this motion, defendant NationsBank succeeded First Fidelity as collateral trustee, and defendant Constellation Bank succeeded first

---

1. A subsequently issued third series of certificates is not at issue here.

2. The contemporaneous bankruptcy of Eastern Airlines increased the threat of depreciation by reason of additional used aircraft inventory entering the market.

series certificate trustee Midlantic.[3] The successors hired defendants Kelley Drye & Warren and Wilentz Goldman & Spitzer, respectively, as legal counsel. Nearly a year later, in August 1992, the new collateral trustee, with the consent of the certificate trustees, made an independent motion to lift the automatic stay.

Two weeks later, the Bankruptcy Court denied First Fidelity's 14-month-old motion for adequate protection. Ruling that a motion to lift the automatic stay need not accompany a request for adequate protection, the court held that the protection of an estate from decline in value is available not from the date of filing the petition for bankruptcy, but from the date of the motion for protection. In this instance, the court noted, the value of the collateral had remained fairly constant since the latter date (June 1991), having bottomed out by January of that year.

NationsBank, the successor collateral trustee, then renewed the motion for adequate protection, citing a decline in the value of the collateral since the hearing on the earlier motion. The result this time was no different, but in so ruling, the court reversed its earlier decision and held that a motion to lift the automatic stay *was* a prerequisite to relief in the form of adequate protection. Inasmuch as the trustees had not sought to lift the stay until August 1992 (the date of the renewal motion), the court held that they were limited to protection against decline in value only for the brief interval since that date. In the absence of a substantial decline during that period, the request for adequate protection was denied, as was the motion to lift the stay.

The debtor's reorganization plan was approved, and the trustees received a distribution of the collateral that fell far short of satisfying their obligations to the certificate holders. On appeal to the United States District Court from the decision on renewal, the trustees argued that (a) a modification of the automatic stay had indeed been requested in the June 1991 motion, and (b) the ruling was erroneous because a motion to lift the stay is not a prerequisite for adequate protection.

The trustees' failure to post a bond allowed the reorganization plan, unimpeded by any stay, to proceed pending appeal. In December 1993, on the debtor's motion, the District Court dismissed the trustees' appeal as moot, "substantial consummation of the Bankruptcy Plan ha[ving] occurred which

---

**3.** This avoided a possible conflict of interest in the settlement of the bankruptcy estate, since the original trustees were also trustees in the Eastern Airlines bankruptcy.

prevents the Court from granting any effective relief." That decision was affirmed, 7-6, on appeal to the Third Circuit sitting in banc, based on similar reluctance to upset the consummated reorganization, despite the "challenging" question of whether a motion to lift the automatic stay should be a prerequisite to a request for adequate protection (*In re Continental Airlines*, 91 F3d 553, 557, *cert denied sub nom. Bank of N. Y. v Continental Airlines*, 519 US 1057, *reh denied* 519 US 1156).

In 1994, plaintiff acquired the interests of the first and second series certificate holders, and commenced actions against the trustees and their attorneys, past and present, in United States District Court for the Southern District of New York, under the Trust Indenture Act of 1939 (15 USC § 77aaa *et seq.*). In the FFB action, plaintiff charged the trustees with breach of fiduciary duty, breach of contract and negligence. Specifically, it alleged failure to seek prompt relief from the automatic stay, which would have allowed adequate protection of the certificate holders from diminution of their collateral during the pendency of the bankruptcy proceedings. The attorneys were charged with malpractice. The same theories were advanced in the BNY action, which sought declaratory relief to protect the trust from defendants' claims of indemnification or reimbursement for expenses.

Both actions were dismissed for lack of standing (*Bluebird Partners v First Fid. Bank*, 896 F Supp 152), plaintiff having arrived on the scene too late to pursue a valid independent claim under the Trust Indenture Act, and the Second Circuit agreed (85 F3d 970). The District Court declined to exercise jurisdiction over pendent State law claims of negligence, malpractice, and breaches of contract and fiduciary duty, which had not advanced significantly beyond the pleading stage, and thus could, in the interest of Federal judicial economy, "be heard in state court" (896 F Supp, *supra,* at 157).

Liquidation of the collateral yielded $33 million, which was held in escrow by the successor collateral trustee for the benefit of the certificate trustees and their disbursing agents. Extensive negotiations ensued among the various successor trustees as to the ultimate distribution. Eventually, plaintiff, as majority certificate holder, forced a settlement, resulting in its receipt of a $5 million distribution.

In accepting the negotiated settlement, plaintiff agreed to

relinquish all claims related to this matter,[4] except for those related to the above-cited litigation in the Southern District "or any similar claims which may be alleged in any other case." The instant actions, commenced in 1996, are not only related to the action that was dismissed in the Southern District the year before, but are the very "pendent state-law claims" that that court anticipated would be heard in the New York courts (896 F Supp, *supra,* at 157). Thus, the release signed in conjunction with plaintiff's distribution by no means foreclosed plaintiff's rights in the instant litigation.

## Appeal No. 1

The crux of these cases is defendants' alleged failure to obtain adequate protection in a timely fashion. On their motion to dismiss, defendants in the FFB case argued that there was no liability, as a matter of law, because the law is not settled as to whether a motion to lift the automatic stay is a necessary prerequisite to a request for adequate protection. (The District Court had reversed itself, and the Third Circuit had divided 7-6 over the issue.) Plaintiff countered that notwithstanding the unclear state of the law, the proper procedure should have been well known to these trustees, who had just recently made the requisite motion in their capacity as trustees for the bankrupt Eastern Airlines.

There is a question of fact as to whether these sophisticated corporate trustees should have moved more quickly to protect their collateral from erosion of its marketability, notwithstanding that they may have acted on advice of counsel (*see, Campbell v Rogers & Wells,* 218 AD2d 576, 580). Unlike an attorney's advice, which is based on an interpretation of the law, a fiduciary's strategy is purely a business decision, made by a corporate banking division that presumably has vast experience in these matters. The first three claims in the FFB action should not have been dismissed.

We affirm the dismissal of the claims against the defendant attorneys. General Obligations Law § 13-107 gives plaintiff a derivative claim against the indenture trustees, but makes no mention of an ancillary right of action against the trustees' attorneys, with whom plaintiff had no privity (*see, Banque Arabe et Internationale D'Investissement v Maryland Natl. Bank,* 850 F Supp 1199, 1209, *affd* 57 F3d 146). Thus, we need not reach the merits of the allegations of malpractice against the defendant trustees' attorneys.

---

4. The wording of the release made it contingent on compliance with the terms and conditions of the settlement agreement.

## Appeal No. 2

The indenture recognized the entitlement of the collateral and series trustees to compensation for disbursements, expenses and reasonable services (§ 9.06 [c]), as well as indemnification for loss or liability (§ 9.06 [f]), and granted said trustees "a lien prior to the Secured Equipment Certificates" on assets held by the collateral trustee, "except money or property held in trust to pay principal of or interest on the Secured Equipment Certificates" (§ 9.06 [g]). Plaintiff sought a declaration that the trustees' priority lien applied only to *surplus* funds held by the collateral trustee, in excess of the amount needed to pay the certificates. These assertions were properly rejected.

The compensation and hold-harmless provisions of section 9.06 must be read in the light of section 3.09 (a), which provides that in the event of a default by Continental, the trustees' entitlement to compensation for "all proper charges, expenses or advances" takes priority over payments of principal or interest due on any of the certificates—in other words, a first priority lien. The fact that plaintiff offers a different interpretation for this clear provision does not render it ambiguous so as to warrant a trial (*Bethlehem Steel Co. v Turner Constr. Co.*, 2 NY2d 456, 460; *Moore v Kopel*, 237 AD2d 124, 125). The task of the court is to enforce the plain meaning of an unambiguous agreement (*American Express Bank v Uniroyal, Inc.*, 164 AD2d 275, 277, *lv denied* 77 NY2d 807), rather than to accept a construction that would render a purposeful provision of the contract meaningless (*Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582, 589). Furthermore, the stipulation approved by the Bankruptcy Court, providing for a liquidating trust that would succeed the indenture trust in order to facilitate distribution to the certificate holders, did not alter those priorities.

We modify the January 8 order in the BNY action only insofar as to dismiss the seventh cause of action (for breach of contract)[5] as well. Distribution of the liquidated trust funds was cleared by the Bankruptcy Court following resolution of an adversary proceeding by nonparty second-series trustee Harris Trust for determination of priorities among the various trustees. In deciding that claim, the Bankruptcy Court issued an order adopting a settlement agreement in which, *inter alia*, the trustees and their successors were released from all claims of liability relating, in any way, to that priority action. Accord-

---

**5.** Asserted against the present collateral trustee (BNY), its predecessor (NationsBank), and the present first series trustee (CoreStates).

ingly, the trustees[6] should have been entitled to dismissal of the seventh cause of action as well, in the BNY action.

## Appeal No. 3

The IAS Court's ruling that the trustees held a priority lien on the liquidated collateral funds for reasonable litigation expenses, but that the reserve maintained for such expenses was excessive, invited submission of reimbursement requests for evaluations as to reasonableness. In question here are bills, all now in the hands of the current collateral trustee (BNY) or its counsel, submitted on behalf of a predecessor collateral trustee as well as present and former first series trustees. These claimants for reimbursement[7] sought privileged status for these records. The Referee appointed to supervise the discovery (CPLR 3104) denied privileged status, ruling that BNY, which was neither the client nor the attorney of any claimant, obviously relied on the data submitted. In reviewing these bills, the Referee held that the claimants had waived any expectation of confidentiality. The IAS Court summarily affirmed.

Materials submitted for in camera review by this Court confirm that the bills in question contain privileged matter revealing details of factual investigation and legal work by the parties' attorneys. The work product privilege is waived upon disclosure to a third party only when there is a likelihood that the material will be revealed to an adversary, under conditions that are inconsistent with a desire to maintain confidentiality (*Matter of Pretino*, 150 Misc 2d 371). Even though the trustees, in asserting the privilege, had the burden of proving they had not effected a waiver (*Nab-Tern-Betts v City of New York*, 209 AD2d 223, 224), there is no evidence that the confidentiality of these records was in any way compromised or intended to be so with respect to this litigation.

While we agree that plaintiff had a right to review disbursement documents for relevance and reasonableness, there is no reason why these submissions could not have been redacted, under the Referee's careful supervision. Indeed, plaintiff's counsel even conceded before the Referee that a portion of these records could be accorded privileged status. As to which data should or should not be redacted, that is the task of the Referee. Our ruling simply repudiates the Referee's conclusion

6. This argument is made only by defendants NationsBank and Core-States. Even though BNY is silent on the point in its separate brief, the principle should apply equally to that trustee.

7. Joined by all other defendants, with the exception of the current collateral trustee.

that partial privilege in the form of redaction should be rejected out of hand. Concur—Ellerin, J. P., Wallach, Williams and Andrias, JJ.