■ Shirley T. Kinge, Appellant, v State of New York, Respondent. (Claim No. 88273.) [754 NYS2d 717] —Peters, J. Appeal from an order of the Court of Claims (Midey, Jr., J.), entered June 24, 2002, which, inter alia, denied claimant's motion for sanctions.

In December 1989, four members of the Harris family were shot to death in their Tompkins County home. In February 1990, the State Police had two suspects, claimant and her son, Michael Kinge. The police claimed to have found a pair of latent fingerprints matching claimant's on a gasoline can at the scene. In November 1990, claimant was convicted of, inter alia, arson in the third degree and burglary in the first degree. However,

in September 1992, such conviction was vacated and her indictment dismissed pursuant to CPL 440.10 because it was discovered that two State Troopers had fabricated the fingerprint evidence and committed perjury during claimant's criminal prosecution. In November 1993, claimant filed this claim alleging, inter alia, negligence, unjust conviction and malicious prosecution.

As the result of this and other police misconduct, Nelson Roth was appointed as Special Prosecutor by the Governor to investigate corruption within the State Police force. In January 1997, after a 4½-year investigation, Roth released a written report (hereinafter the Roth report) which included a discussion about claimant's criminal case. In the spring of 1997, the Attorney General's office received the records underlying the preparation of the Roth report; such records consisted of approximately 110 to 120 boxes. In December 1997, claimant's former attorney served extensive discovery demands upon defendant which included a request for those documents underlying the Roth report which pertained to the Harris homicide investigation.[1] By letter dated February 10, 1998, the Attorney General's office informed claimant's counsel that it was not yet able to locate the documents requested.

Upon the substitution of claimant's counsel in May 2000, correspondence with the Attorney General's office resumed in an effort to obtain such documents. When they were not forthcoming, claimant's counsel made a motion, in January 2001, seeking penalties pursuant to CPLR 3126. Counsel also sought sanctions against the Attorney General's office pursuant to 22 NYCRR 130-1.1 for frivolous conduct. Only two days after being served with the motion, the underlying documents were found and defendant cross-moved for an order of protection, offering an explanation for the delayed disclosure. By direction of the Court of Claims, a conference call was held in February 2001 during which it was agreed that the documents would be inspected and then claimant would serve a particularized demand; the court deemed both the motion for sanctions and the cross motion to be withdrawn without prejudice.

Claimant complied and, four days before such requested documents were required to be produced, defendant demanded an executed stipulation of confidentiality. Although claimant's counsel originally agreed to a limited form of such stipulation,

---

1. The Roth report was timely furnished. The instant dispute pertains only to those documents underlying such report.

claimant refused to sign the generalized stipulation presented; no compromise could be reached.[2]

Claimant filed another motion seeking to renew both the unanswered motion to compel discovery and the motion for remedies and sanctions. On May 23, 2002, the parties reached a stipulation concerning which documents would be discoverable with the exception of four, only one of which the Court of Claims later held to be an attorney work product protected by CPLR 3101 (c). The court denied claimant's request for remedies and sanctions, and this appeal ensued.

Addressing the denial of claimant's request to award sanctions pursuant to CPLR 3126, we note that such determination will remain undisturbed unless there is a clear abuse of discretion (*see Hartford Fire Ins. Co. v Regenerative Bldg. Constr.*, 271 AD2d 862, 863-864). In deciding whether a party intentionally, willfully or in bad faith failed to comply with discovery demands (*see Osterhoudt v Wal-Mart Stores*, 273 AD2d 673, 674; *Beck v Morse*, 271 AD2d 916, 917; *Hartford Fire Ins. Co. v Regenerative Bldg. Constr.*, *supra* at 863), the determination will be tempered by a " 'general policy favoring the resolution of actions on their merits' " (*Osterhoudt v Wal-Mart Stores*, *supra* at 675, quoting *Mrs. London's Bake Shop v City of Saratoga Springs*, 144 AD2d 749, 750). Hence, before striking an answer, entering a default judgment or issuing a preclusion order, there must be a clear showing of willful or contumacious conduct (*see Osterhoudt v Wal-Mart Stores*, *supra* at 675; *Nabozny v Cappelletti*, 267 AD2d 623, 625). .

While the record reflects an extensive delay in furnishing the requested documents, once those materials were found, claimant was shortly in possession of all discoverable material to which she was entitled. Defendant detailed numerous reasons underlying its inability to locate the documents, which included miscommunications between the State Police, its Criminal Division and the Division of State Counsel. Moreover, defendant always sought a protective order from blanket disclosure and it was only after claimant reviewed the report and submitted her request for specific documents that defendant could begin to assert viable contentions regarding the discoverability of certain documents. With the further absence of a proffer indicating prejudice (*see Hartford Fire Ins. Co. v Regenerative Bldg. Constr.*, *supra* at 863-864; *Nabozny v Cappelletti*, *supra* at 626) or a clear showing that there was bad

---

2. By such time, however, defendant had already been granted a request, ex parte, to have an extension of time to respond to discovery due to the terrorist attacks of September 11, 2001.

faith or willfulness connected with defendant's failure to find and disclose these documents, we agree with the determination of the Court of Claims. "The mere loss of a record, while perhaps careless, does not, without more, establish willful or contumacious conduct" (*Nabozny v Cappelletti, supra* at 626 [emphasis and citations omitted]).

Nor do we find any error in the Court of Claims' discretionary determination to deny sanctions, pursuant to 22 NYCRR 130-1.1, due to a failure to find frivolous conduct (*see Chevy Chase, F.S.B. v Sarsfield*, 278 AD2d 773, 773-774)—a determination which will not be disturbed unless there exists an abuse of discretion (*see Household Bank Region I v Stickles*, 276 AD2d 940, 941). While we acknowledge that "[c]onduct may be deemed frivolous if it is[, inter alia,] without legal merit[,] * * * unsupported by a reasonable argument, undertaken to unduly prolong litigation or to harass or injure another" (*id.* at 941), no such proffer was made concerning the targeted Assistant Attorneys General in connection with this proceeding.

Next addressing the determination that the memorandum from Roth to the Chief Inspector for the State Police is privileged from disclosure pursuant to CPLR 3101 (c) as attorney work product (*see Salzer v Farm Family Life Ins. Co.*, 280 AD2d 844, 845), we recognize that such privilege should be narrowly applied to " 'materials prepared by an attorney, acting as an attorney, which contain his [or her] analysis and trial strategy' " (*id.* at 846, quoting *Graf v Aldrich*, 94 AD2d 823, 824). Claimant challenges the privilege by first contending that the privilege was waived due to her prior viewing of the document. Upon this basis, the contention is rejected outright since the disclosure was inadvertent (*see McGlynn v Grinberg*, 172 AD2d 960). By court order, the parties were required to view all documents before defendant was permitted to assert a privilege. Thus, a waiver will not be found due to defendant's compliance with the Court of Claims' directive. As to the second challenge to the document as attorney work product, we again find no error since "an attorney's work product is privileged both in the context of the litigation for which it was prepared and in [the context, as here] * * * of any subsequent legal proceedings" (*Slate v State of New York*, 268 AD2d 857, 859).

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Ordered that the order is affirmed, without costs.