OPINION OF THE COURT
Rolando T. Acosta, J.
The court previously granted defendants’ motion, ordered the production of certain documents, and informed the parties that a more detailed decision would follow. The court now sets forth its reasons for granting defendants’ motion and hereby vacates and supersedes the August 8, 2005 short form order. Background
Plaintiffs are the targets of criminal and civil investigations by the Securities and Exchange Commission (SEC) and the New York State Attorney General’s Office (NYAG) allegedly for late trading in the mutual fund industry. In their complaint for malpractice in the present case, plaintiffs claim that they engaged defendants to serve as their counsel and sought advice from them in October of 2001 on whether rule 22c-l of the Investment Company Act (15 USC § 80a-1 et seq.) bars trading in mutual funds after 4:00 p.m. Plaintiffs claim that they received advice from defendants that departed from the standard of care, relied on defendants’ advice *294 in implementing a trading program with their clients and, subsequently, as a direct result of this negligent advice, plaintiffs became subjects of the investigations and were caused to expend substantial attorney’s fees and expenses in defending themselves. Plaintiffs claim as damages the over two million dollars in legal fees and expenses related to their still ongoing representation by LeBoeuf, Lamb, Greene & MacRae, LLP in the investigations.
Defendants have served subpoenas on LeBoeuf and Seward & Kissel, LLP two nonparty law firms that defendants believe possess and are withholding documents relevant to their defense of this malpractice action. LeBoeuf argues that in response to defendants’ subpoenas it has produced all relevant nonprivileged material. It seeks attorney-client privilege and work product protection for documents it has identified in a privilege log produced to defendants and which it claims are unrelated to the underlying issues in the instant litigation.
Defendants argue that plaintiffs have waived their attorney-client privilege and work product protection by putting at issue the nature of plaintiffs’ relationship with defendants, LeBoeuf and Seward, the content of the advice received from the two law firms with respect to plaintiffs’ trading program, and the reasons plaintiffs became targets of the investigations by the SEC and the NYAG. In particular, defendants seek documents in the privilege log related or referring to the nature of plaintiffs’ engagement of LeBoeuf, Seward and defendants, documents related to the legality of plaintiffs’ trading program, documents related to the true nature of plaintiffs’ jeopardy, and documents related or referring to presentations made to investigators.[1]
*295 Plaintiffs deny that the “at issue” doctrine is applicable on the facts of the instant motion because LeBoeuf did not provide concurrent advice on late trading in October 2001 when plaintiffs received advice from defendants. Even if the doctrine applies, LeBoeuf argues for work product protection independently of plaintiffs.
Analysis
The attorney-client privilege provides that, absent a waiver by the client,
“an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication” (CPLR 4503 [a]).
The purpose of the privilege is “to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment.” (Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980].)
The sanctity of the attorney-client privilege notwithstanding, “[it] may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.” (United States v Bilzerian, 926 F2d 1285, 1292 [2d Cir 1991]; Schulte Roth & Zabel v Chammah, 251 AD2d 132, 132 [1st Dept 1998] [“defendant waived (attorney-client) privilege by placing the subject matter of his attorney’s advice in issue by asserting a malpractice counterclaim”]; Orco Bank v Proteinas Del Pacifico, 179 AD2d 390, 391 [1st Dept 1992] [“record discloses a substantial need for . . . defendant to have access to materials which may allow it to contest plaintiffs claims that its attorneys advised it at all with respect to” matter at issue]; Bolton v Weil, Gotshal & Manges LLP, 4 Misc 3d 1029[A], 2004 NY Slip Op 51118[U], *5 [Sup Ct, NY County 2004] [when malpractice plaintiff “obtain(s) advice from another lawyer in connection with the underlying action . . . the communications . . . (are) no longer privilege since . . . (they are) relevant as to the . . . plaintiffs reliance on the advice of the defendant law firm, and whether such advice resulted in damages to the *296 plaintiff’]; IMO Indus. v Anderson Kill & Olick, 192 Misc 2d 605, 609 [Sup Ct, NY County 2002] [“The attorney-client privilege is waived where the client places the subject matter of the communication in issue or when the invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information”].)
In Hearn v Rhay (68 FED 574, 581 [ED Wash 1975]), the court set forth three factors that, when present, commonly result in waiver. These factors include: (1) assertion of privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. (Id.; cf. Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez, 2003 WL 21277139, *2, 2003 US Dist LEXIS 9108, *5 [SD NY, June 2, 2003], affd 2005 WL 756859, 2005 US Dist LEXIS 5484 [SD NY, Apr. 1, 2005] [“Because (plaintiff) is claiming that it was relying on (defendant’s) advice (or its failure to withdraw as counsel), ‘the legal advice it received from any other lawyers on that subject relates to the reasonableness of (its) reliance and is not subject to the attorney/client privilege’ ”], quoting In re Gaming Lottery Sec. Litig., 2000 WL 340897, *2, 2000 US Dist LEXIS 3931, *5 [SD NY, Mar. 20, 2000].)
While some courts have expressed concerns with the factors laid out by the Hearn court inasmuch as they purportedly lead to wholesale waiver of privilege, even those courts have found that protection is waived when plaintiff places at issue “factual assertions the truth of which can only be assessed by examination of the privileged communication.” (Pereira v United Jersey Bank, 1997 WL 773716, *4, 1997 US Dist LEXIS 19751, *12 [SD NY, Dec. 11, 1997], citing Liberty Envtl. Sys., Inc. v County of Westchester, 1997 WL 471053, *3, 1997 US Dist LEXIS 12200, *10 [SD NY, Aug. 18, 1997] [characterizing the holding in Hearn as “the subject of continuing debate”].) Here, plaintiffs have placed their representation by LeBoeuf and Seward at issue by claiming as damages the very same legal fees being paid to LeBoeuf to get them out of the trouble directly caused by defendants’ bad advice. (Hearn v Rhay, 68 FED 574 [ED Wash 1975]; Po *297 tomac Elec. Power Co. v California Union Ins. Co., 136 FRD 1 [D DC 1990],)[2]
LeBoeuf argues that defendants pin their argument for waiver of protection through the “at issue” doctrine on the faulty premise that LeBoeuf provided concurrent advice to plaintiffs on the issue that led to the underlying action for malpractice, namely, the legality of late trading. Specifically, that in October 2001, when plaintiffs received advice from defendants regarding late trading, LeBoeuf was performing many services for plaintiffs and the businesses they were forming. LeBoeuf claims, however, that it was not, concurrently with defendants, giving plaintiffs advice on late trading.
LeBoeuf s argument is of little consolation to defendants inasmuch as plaintiffs’ complaint places responsibility on defendants for all of plaintiffs’ jeopardy resulting from the SEC and the NYAG investigations. Thus, defendants are entitled to know about LeBoeuf s legal work, including whether LeBoeuf itself feels that plaintiffs’ jeopardy from the investigations traces back to defendants’ bad advice or some other activity related or unrelated to LeBoeuf s work before and after the investigations commenced.[3] Only LeBoeuf can legally assess the thrust and scope of the investigations, an assessment which is vital to defendants’ defense.
Moreover, there are questions related to whether in fact LeBoeuf s advice back in October 2001 was limited to employment and other matters related to plaintiffs’ other businesses, or whether there was anything in LeBoeuf s allegedly unrelated advice that provided plaintiffs comfort to engage in late trading *298 a month prior to defendants’ advice. Given these questions, disclosure is required.
Indeed, the facts here are remarkably similar to those in Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez (2003 WL 21277139, 2003 US Dist LEXIS 9108 [SD NY, June 2, 2003], affd 2005 WL 756859, 2005 US Dist LEXIS 5484 [SD NY, Apr. 1, 2005]), where the court held that, because plaintiff was claiming that it relied on defendant’s advice on a certain issue to its detriment, the legal advice it received from any other lawyers on that issue related to the reasonableness of plaintiffs reliance and was not subject to the attorney-client privilege. (See also Bank Brussels Lambert v Credit Lyonnais [Suisse], S.A., 210 FED 506, 510 [SD NY 2002] [“(t)he question of whether or not (the prior law firm accused of malpractice) mislead or misrepresented things to (third-party plaintiff) directly depends on what (third-party plaintiff )s other counsel knew . . . Although (third-party plaintiff) tries to gloss over what it has put at issue, there is no doubt (third-party plaintiffs) state of mind is relevant to this case, and therefore has put the otherwise privilege documents at issue”].)
Here, since plaintiffs claim that their problems were caused by the actions or inactions of defendants, any legal advice they received from any other lawyer including LeBoeuf on or about October 2001 on any subject related to the reasonableness of their reliance on defendants’ advice is not subject to the attorney-client privilege. And, in fairness, defendants have a right to know LeBoeuf s concurrent, but not late-trading related advice to plaintiffs, and the extent to which such advice led plaintiffs to engage in late trading before defendants’ advice.
It should also be noted that Edward Stern, one of plaintiffs’ largest customers, testified in a recent criminal trial that plaintiffs told Mr. Stern that plaintiffs were relying upon a legal opinion of LeBoeuf to engage in late trading. Although LeBoeuf denies that such advice was given concurrently with defendants’ advice, this court is not required to assess the credibility of competing statements under oath. It suffices that documents exist which have been put at issue by plaintiffs and made relevant to their case. Under these circumstances, plaintiffs have waived their attorney-client privilege.
Nor do plaintiffs and LeBoeuf have refuge in the work product protection which, like the attorney-client privilege, may be waived pursuant to the “at issue” doctrine. (Bank Brussels Lambert v Credit Lyonnais, 210 FRD 506 [SD NY 2002]; see *299 also, G.D. Searle & Co. v Pennie & Edmonds, 308 AD2d 404 [1st Dept 2003] [finding waiver as to both attorney-client privilege and work product protection]; Bolton v Weil, Gotshal & Manges LLP, 4 Misc 3d 1029[A], 2004 NY Slip Op 51118[U], *4 [Sup Ct, NY County 2004] [“work-product privilege can also be waived under the ‘at issue’ doctrine”].) Plaintiffs bear the burden of establishing nonwaiver of the work product protection, which must be narrowly construed, and its application made consistent with the purposes underlying it. (Royal Indem. Co. v Salomon Smith Barney, Inc., 4 Misc 3d 1006[A], 2004 NY Slip Op 50739DJ] [Sup Ct, NY County 2004]; see also, Bluebird Partners v First Fid. Bank, 248 AD2d 219 [1st Dept 1998] [party asserting work product protection bears the burden of establishing nonwaiver of the protection].)
This court finds that, like with the attorney-client privilege application, plaintiffs have failed to meet their burden of establishing that their work product protection has not been waived. Indeed, by seeking as damages the legal fees paid to LeBoeuf, plaintiffs have put at issue LeBoeuf’s representation which, after all, is carried out solely to undo the damage allegedly done by defendants’ bad advice.
Plaintiffs and LeBoeuf’s reliance on CPLR 3101 (c), which states that “[t]he work product of an attorney shall not be obtainable,” is misplaced inasmuch as it has been effectively trumped by CPLR 3101 (d) (2) whose protection is qualified. (See, Patrick M. Conners, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:26-C3101:29, at 52-79 [2005]; Siegel, NY Prac § 347, at 557-558 [4th ed].) As Professor Conners notes in his commentaries, the material is either confidential and thus protected under CPLR 3101 (b) or it falls within CPLR 3101 (d) (2), which enjoys only conditional immunity. (Patrick M. Conners, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L27.) CPLR 3101 (d) (2) provides that material prepared in anticipation of litigation or for trial may be discovered as long as the party requesting it has a “substantial need” for the material and is unable without “undue hardship” to obtain the equivalent of the material by other means. When ordering this material disclosed, the court is required to “protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney” concerning the litigation.
Here, defendants clearly have a “substantial need” for the material, especially if it turns out that the proffer notes indicate *300 that late trading had taken place as a result of anything other than defendants’ advice; or that LeBoeuf was of the legal opinion that defendants’ advice was reasonable and not the sole element in plaintiffs’ trading program. Moreover, defendants cannot obtain the information by any other means without “undue hardship.”
Nor does LeBoeuf have an independent protection of its work product under the facts of this case. LeBoeuf has been paid well to defend plaintiffs in the investigations. It has been paid for the documents it has generated and for the mental impressions, conclusions, and strategic thoughts related to plaintiffs’ jeopardy from the investigations. While CPLR 3101 (d) (2) strongly advises against disclosure of “the mental impressions, conclusions, opinions or legal theories of an attorney” concerning the litigation, under the facts of this case both attorney-client privilege and work product protection have been waived. This court cannot in all fairness permit plaintiffs to hold defendants wholly responsible for their predicament and then allow plaintiffs’ attorneys to deny defendants the opportunity to examine possibly exonerating documents, albeit of a very sensitive nature given the ongoing investigations.[4]
Jakobleff v Cerrato, Sweeney & Cohn (97 AD2d 834 [2d Dept 1983]) and TIG Ins. Co. v Yules & Yules (1999 WL 1029712, 1999 US Dist LEXIS 17607 [SD NY, Nov. 12, 1999]), cited by plaintiffs and LeBoeuf, are not to the contrary. Unlike the court here, the courts in Jakobleff and TIG concluded that plaintiffs had done nothing to place their relationship with their new firms at issue. That is, by alleging malpractice against their former attorneys, they had placed that prior relationship “at issue” only. Their relationship with their new attorneys representing them on their malpractice claims was still protected. But that’s not the case here, where as noted above, there is some indication that plaintiffs were in fact relying upon a legal opinion by LeBoeuf to engage in late trading.
Although LeBoeuf denies this claim of concurrent representation, LeBoeuf’s concerns can be dealt with by having the *301 contested documents presented to the court for in camera review before a final determination is made. LeBoeuf is correct in labeling these proffer notes and draft complaints as quintessential work product. They represent the art of lawyering, perhaps the most creative aspect of a lawyer’s work. However, the court finds that under the facts of this case these documents lack the absolute protection ascribed by plaintiffs, particularly given the operation of the “at issue” doctrine. Nevertheless, in an attempt to protect against disclosure of this type of material, and in what the court considers an excess of caution, LeBoeuf is ordered to submit all proffer notes and draft complaints for in camera examination.

. In a recent letter, LeBoeuf claims it has now turned over to defendants all material requested, including documents submitted as part of the investigations and two documents originally included in its privilege log: a PowerPoint presentation to the SEC and a fax to a lawyer at Sidley, Austin, Brown & Wood. The remaining documents for which LeBoeuf continues to claim absolute protection under CPLR 3101 (c)
“fall into three categories: (a) documents containing LeBoeuf attorneys’ mental impressions, conclusions, and strategic thoughts related to upcoming attorney proffer sessions with the [SEC and the NYAG]; (b) documents containing LeBoeuf attorneys’ mental impressions and conclusions made during and after proffer sessions with the SEC and NYAG; and, (c) draft complaints reflecting LeBoeuf attorneys’ mental impressions, conclusions, and strategic thoughts.” (Aerni letter, June 20, 2005.)

. With respect to Seward’s claim of privilege for several pages of handwritten notes created by Jack Rigney, a partner at Seward, plaintiffs themselves admit that they sought advice from Mr. Rigney on late trading. While Seward denies that such advice was given, plaintiffs claim to have continuously relied on defendants’ bad advice through on or about the time they had a conversation with Mr. Rigney regarding rule 22c-1, the very same rule which was the subject of the alleged bad advice from defendants. Under these circumstances, plaintiffs have waived their attorney-client privilege and the handwritten notes must be turned over to defendants.

. There are serious questions related to the nature of the SEC and NYAG investigations. While the investigations clearly involve late trading, plaintiffs have also been sued civilly for, inter alia, alleged fraudulent manipulations of mutual funds, paying off fund managers to gain entry into the funds, stripping out the profits that would otherwise be earned by long-time investors, and engaging in camouflage techniques to hide trades. (See defendants’ exhibit 19, citing In re Mutual Funds Inv. Litig. and In re Alger, Columbia, Janus MFS, MDL Docket No. 1586 [D Md] [consolidated amended fund derivative complaint].)

. The exonerating nature of the documents in LeBoeuf s privilege log is not speculative given LeBoeuf s October 28, 2003 letter which concedes that “[plaintiffs] entered trades received after 4:00 p.m. for Mr. Stern for a month or so prior to obtaining legal advice,” and that “[defendants’] position was perfectly reasonable given the ambiguity in the statute. In fact, there is a strong argument that the attorneys’ position on this point was not only reasonable, but ultimately may prove[ ] to have been correct.”