Perkins v State of New York (2024 NY Slip Op 51834(U))

[*1]

Perkins v State of New York

2024 NY Slip Op 51834(U)

Decided on December 17, 2024

Court of Claims

Marnin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 17, 2024
Court of Claims

Donnell Perkins, Claimant,

against
The State of New York, Defendant.

Claim No. 139637

For Claimant:
LAW OFFICE OF JOEL B. RUDIN, P.C.
By: Joel B. Rudin and Jacob Loup, Esqs.
For Defendant:
HON. LETITIA JAMES, NEW YORK STATE ATTORNEY GENERAL
By: Antonella Papaleo, Esq., Assistant Attorney General

Seth M. Marnin, J.

Background of the Dispute
On or about January 3, 2024, the Court signed a Judicial Subpoena Duces Tecum and Stipulation and Order [FN1]
 concerning the subpoena that addressed the production of documents by Kings County District Attorney's Office (KCDAO) to the parties.[FN2]
(NYSCEF Doc. Nos. 29 and 30.) In relevant part, these documents outlined the materials demanded and the timeframe over which the KCDAO would produce the records related to People v Donnell Perkins and People v Kareem Mayo. The stipulation and order provided for a rolling production scheduled to conclude within six months. It is the Court's understanding that the KCDAO has produced the materials demanded. However, KCDAO only provided the documents to claimant's counsel.[FN3]
(NYSCEF [*2]Doc. No. 52 at 4, ¶ 10.)
Among the more than 50,000 pages of documents provided by KCDAO to the claimant was a letter — or, more accurately, an image of a portion of a letter — authored by Mr. Joel Rudin, Mr. Perkins' counsel, addressed to Mr. Perkins. (NYSCEF Doc. No. 45 at 1, ¶ 2; 2 - 3, ¶¶ 7 — 9; 24 - 27.) As described by Mr. Rudin, the underlying letter was sent in August 2017 to Mr. Perkins while he was still incarcerated and his case was under review by KCDAO's Conviction Review Unit (CRU). (Id. at 2 ¶ 7; 24 - 27.) The portion of the letter included in KCDAO's production is described as an image of three paragraphs of the original letter. (Id. at 3 ¶ 9.) The three paragraphs provided Mr. Perkins with an update from Mr. Rudin concerning the status of the CRU investigation and Mr. Rudin's "opinions and thought processes about our legal strategy and about some of the evidence and potential evidence in the case." (Id.) This three-paragraph portion of the letter appeared in KCDAO's production in eight places. (Id. ¶ 10.) Upon receipt of this portion of the letter from KCDAO, claimant's counsel promptly wrote to KCDAO asking that they conduct an investigation to learn how the letter came into KCDAO's possession. (Id. at 4, ¶ 12; 6, ¶ 16.)
When claimant provided KCDAO's document production to defendant, rather than forwarding the entire production, claimant first redacted the eight pages where this three-paragraph portion of the letter appeared. (NYSCEF Doc. No. 52 at 5, ¶ 11; NYSCEF Doc. No. 45 at 3 — 4, ¶ 10.) Claimant asserted that the documents withheld were protected from disclosure because they contained privileged attorney-client communications and attorney work product and were therefore not discoverable. (NYSCEF Doc. No. 45 at 3, ¶ 8; 4, ¶¶ 11 - 12; NYSCEF Doc. No. 52 at 5, ¶ 12.) Defendant disagreed and asked claimant to provide the redacted documents. (NYSCEF Doc. No. 52 at 5, ¶ 12.) The parties were unable to resolve the dispute on their own. The Court held a conference on September 12, 2024 where the parties reiterated their respective positions. At the time of this conference, the parties did not know how KCDAO came into possession of the document.
Since that conference, KCDAO conducted an investigation and the Court and parties have now learned how KCDAO came into possession of the document. While still incarcerated, Mr. Perkins shared the letter with his father, Donnell Mayo. Mr. Mayo then shared a copy of the portion of the letter with witness Clarke Robertson, who then shared it with witness (and his sister) Keeler Brown. In August 2021, KCDAO prosecutors and investigators, as part of their opposition to claimant's 440 motion, were interviewing witnesses. During interviews with Robertson and Brown, the letter was discussed and a KCDAO prosecutor asked the witnesses to share the letter with them. The witnesses did so, and it is evident from the prosecutor's handwritten notes that they understood at that time that, although the witnesses believed the letter came from KCDAO, it actually came from Mr. Perkins' attorney, Joel Rudin. (NYSCEF Doc. No. 45 at 4 - 6, ¶¶ 13 — 17, Ex. 4 - 8.)
The Court issued an Order to Show Cause on September 19, 2024, ordering claimant to show cause as to why the documents demanded by the defendant should be protected from production and ordering defendant to show cause as to why the claimant should be compelled to produce the documents. (NYSCEF Doc. No. 42.)
Finally, on November 27, 2024, the Court directed claimant's counsel to provide the [*3]Court with an unredacted copy of the portion of the letter so that the Court could conduct an in camera inspection of the document to assist the Court in determining whether it should be protected from disclosure. (NYSCEF Doc. No. 58.) Claimant's counsel promptly complied with the Order and provided the Court with an unredacted version of the document later that same day.
Analysis
Claimant argues that these documents are protected by attorney-client privilege and as attorney work product, and that there was no waiver of privilege or protection. Claimant further argues that the documents should not have been disclosed by KCDAO pursuant to CPLR § 4503 (a) (1) and that once claimant learned that KCDAO was in possession of the documents, claimant took immediate steps to remedy the disclosure. (NYSCEF Doc. No. 45 at 7 — 14.) Defendant counters that it is entitled to the documents. To the extent the document was privileged when Mr. Rudin sent the letter to Mr. Perkins, the defendant does not concede. Defendant argues that the mere fact that this letter ended up in KCDAO's files, an entity with whom claimant's interest were not aligned, means that privilege was waived. (NYSCEF Doc. No. 53 at 8, ¶ 14.) Defendant also highlights that the file in which this letter was found is KCDAO's file, not the claimant's, and the defendant is therefore entitled to the entire file in this matter. (NYSCEF Doc. No. 52 at 7 - 8, ¶¶ 17 — 18; NYSCEF Doc. 53 at 10, ¶ 18.) Defendant further argues that claimant did not take steps to keep the document confidential. The State also insists that the attorney work product doctrine does not protect the documents from disclosure, although the grounds on which this argument are made are somewhat unclear but seem to be that because the documents were in the possession of claimant's adversary (KCDAO) and because they were not prepared in anticipation of trial, protection was waived. (NYSCEF Doc. No. 53 at 9 — 10, ¶¶ 16-18; NYSCEF Doc. No. 55 at 2 — 3, ¶¶ 3 - 4.) The State's submissions do not address claimant's argument that KCDAO was not permitted to disclose the documents.
As an initial matter, the Court finds that in email correspondence, at the videoconference, and in an affirmation signed under the penalties of perjury, Mr. Rudin and Mr. Loup have credibly represented to the Court that the letter contains Mr. Rudin's update to his client and his legal opinions and thoughts about their legal strategy and evidence related to Mr. Perkins's case and the CRU investigation. Having now reviewed the document in camera, the Court is satisfied that the redacted documents are what they are purported to be: eight copies of the same three-paragraph portion of a letter written by Mr. Rudin to his client, Mr. Perkins.
1) Attorney-Client Privilege
Although CPLR § 3101 (a) provides that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action," CPLR § 3101 (b) protects "privileged matter" from disclosure. There is no real dispute that "[a]s a matter of public policy and pursuant to statute, communications between an attorney and client have been accorded a privileged status." (Matter of Civil Serv. Empls. Assn. v Ontario County Health Facility, 103 AD2d 1000, 1000 [4th Dept 1984], citing CPLR § 4503, appeal dismissed 64 NY2d 816 [1985].) Although typically arising in the context of a client's communication to an attorney, the privilege extends as well to communications from attorney to client. (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991].) Ultimately, whether or not a communication will be protected from disclosure will be determined by the particular circumstances of the case. (Stroh v General Motors Corp., 213 AD2d 267, 268 [1st Dept 1995].)
The party asserting the attorney-client privilege bears the burden of establishing that the [*4]communication it seeks to protect from disclosure constitutes privileged communication. That is, the party that wishes to protect the document from disclosure must demonstrate that the communication was a communication between an attorney and their client; that the communication was related to seeking, receiving, or providing legal advice or services in a professional relationship; that the communication was legal in nature; that it was confidential; and that the privilege was not waived. (Coads v Nassau County, 231 AD3d 902, 904 [2d Dept 2024].) Here, there is no disagreement that Mr. Rudin was counsel for Mr. Perkins at the time the redacted document was written. (NYSCEF Doc. No. 45 at 24 ¶¶ 1 — 2.) Mr. Rudin has represented to the Court that the letter was addressed to Mr. Perkins and that it was marked in a manner that conveyed that it was a confidential communication. (Id. at 25, ¶ 5.) The claimant has demonstrated through its filings, and in the Court's independent in camera review of the document, that the document at issue was indeed a letter from Mr. Rudin to his client, Mr. Perkins, that the communication was legal in nature, and that Mr. Rudin was offering legal analyses, conclusions, advice, and impressions to his client in the course of his representation of Mr. Perkins. The Court therefore concludes that the portion of the letter at issue constituted privileged matter. The next question that must be addressed is whether the attorney-client privilege was waived.
As a general principle, attorney-client privilege is waived when an otherwise privileged communication is made in the presence of a third party or later disclosed to or shared with a third party. (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 624 [2016]; Molner v Molner, 231AD3d 484, 485 [1st Dept 2024].) However, courts have identified exceptions to this principle. For example, in Stroh v General Motors Corp., the court found that the presence of plaintiff's adult daughter at meetings between her mother, the client, and her mother's attorney did not undermine the privileged nature of those conversations because the daughter "served as her mother's agent" (213 AD2d 267, 268 [1st Dept 1995]). The court found that the daughter was present at the meetings to facilitate communication between the attorney and her mother, and her mother expected confidentiality to be maintained. Similarly, in Kraus v Brandstetter, the court found that attorney-client privilege was not waived when the client shared reports providing legal advice from in-house counsel with management employees. The Kraus court identified the fundamental question in assessing waiver as "whether the client intended to retain the confidentiality of the privileged materials and whether the client took reasonable steps to prevent disclosure" (185 AD2d 300, 301 [2d Dept 1992]). In contrast to these scenarios, the court in People v Henry found that although the client's girlfriend was acting as his agent when he asked her to deliver a letter to his attorney, because the client authorized his girlfriend to also share the letter with her mother, privilege was waived (173 AD3d 1470, 1479-1480 [3d Dept 2019], lv denied 34 NY3d 932 [2019]). Courts have also identified exceptions where an attorney represents multiple parties who have a common interest as an example of where privilege is not waived when a confidential communication is shared among those parties. (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 625 [2016].)
The claimant argues that privilege was not waived when he shared the letter with his father because he had a reasonable expectation that, given their common interest in Mr. Perkins' exoneration and Mr. Mayo's assistance with his son's case outside the correctional facility, the letter would remain confidential, i.e., Mr. Perkins, when seeking his father's assistance, did not intend to waive privilege when he shared the document with his father. (NYSCEF Doc. No. 45 at 8, ¶ 24.) However, claimant's arguments, to the extent that they rely on Mr. Perkins and his [*5]father sharing a "common interest" or "common legal interest," are not supported here. While the Court has no doubt that Mr. Perkins and his father had a deeply shared interest in Mr. Perkins' vindication, and that their goals were aligned, that is simply not the kind of "shared interest" the courts are talking about. Rather, the courts are concerned with protecting communication between and among codefendants or coplaintiffs and their counsel, where the "shared interest" relates to common claims or defenses of the parties in current or reasonably anticipated litigation. (See Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 628 [2016]; Rossi v Blue Cross & Blue Shield of Greater NY, 73 NY2d 588, 591-592 [1989].) The "shared interest" or "shared legal interest" claimant posits here would have untenable results. Any number of individuals and organizations would no doubt have a shared interest or shared legal interest in freeing a wrongfully convicted man - and, indeed, in even helping Mr. Perkins. But surely Mr. Perkins could not have shared his counsel's letter with them all and expected it to maintain its privileged status.
However, the line of cases that address the survival of the attorney-client privilege in the presence of a third party "agent" of the client, including a family member, rest on the role the family member or agent has played with respect to facilitating communication between the lawyer and the client and the needs of the client for that assistance. (Molner v Molner, 231AD3d 484, 485 [1st Dept 2024]; Stroh v General Motors Corp., 213 AD2d 267, 268 [1st Dept 1995].) Here, though, claimant's father was not enabling communication between Mr. Perkins and his attorney. Rather, Mr. Perkins shared the letter with his father so that his father could assist him in finding witness contact information at a time when Mr. Perkins was still incarcerated and unable on his own to do so. (NYSCEF Doc. No. 45 at 68 — 69, Exhibit 8, ¶¶ 4 - 5.) But it is "the circumstances of each case that will determine whether a communication by a client to an attorney should be afforded the cloak of privilege" (Stroh v General Motors Corp., 213 AD2d 267, 268 [1st Dept 1995]). In this context, Mr. Perkins was incarcerated and not in a position to obtain contact information for a witness. He shared the communication with his father in order for his father to assist him in finding this information. The Court therefore finds that the circumstances here weigh in favor of preserving privilege. But the analysis does not end here.
Mr. Mayo then shared the privileged letter with another individual, a witness. Courts have recognized that "it is the client's responsibility to insure continued confidentiality of his communications." (In re von Bulow, 828 F2d 94, 101 [2d Cir 1987].) Although claimant cites to case law and acknowledges that the fundamental question is whether the client took reasonable steps to prevent the disclosure of the document, he does not identify any steps he took to avoid disclosure (NYSCEF Doc. No. 56 at 3, ¶ 5) but instead, only states that he had a reasonable belief his father would not share the letter. (Id. at 3 — 4, ¶ 6.) To the extent claimant describes his efforts to remediate, those efforts occurred once he learned that the document had been shared with KCDAO (NYSCEF Doc. No. 45 at 6, ¶ 17; NYSCEF Doc. No. 56 at 4, ¶ 7). However, by that point, it was far too late. Claimant here is describing after-the-fact remediation efforts where preventative measures were what was required. (State v Mawson, 2010 R.I. Super. LEXIS 145, at *13, 2010 WL 4155234, at *4 [Super Ct Oct. 18, 2010, No. K1/2005-0277A] [affirmative action was necessary to preserve confidentiality].) To have successfully preserved attorney-client privilege, at minimum, claimant would need to demonstrate that, for example, he explicitly directed his father to refrain from sharing the privileged communication. Not authorizing disclosure is not the same as affirmatively directing that his father not disclose the letter. (NYSCEF Doc. No. 45 at 69, Exhibit 8, ¶5 ["I never authorized him to disclose the letter to [*6]anyone else."].)
While the Court does not doubt that Mr. Perkins did not believe or intend for his father to disclose the communication, that is indeed what happened. The client did not need to intend for the disclosure to happen for it to waive privilege. (State v Mawson, 2010 R.I. Super. LEXIS 145, at *13, 2010 WL 4155234, at *4 [Super Ct Oct. 18, 2010, No. K1/2005-0277A] ["An involuntary disclosure can waive the attorney-client privilege, even if client had no desire to waive the privilege"].) The Court therefore finds that while Mr. Perkins sharing the privileged communication with his father did not waive attorney-client privilege, when Mr. Mayo shared the communication with someone else, the attorney-client privilege of that document was lost.
2) Attorney Work Product
Although described as an "ill-defined category," CPLR § 3101 (c) makes unobtainable the "work product of an attorney." (David D. Siegel & Patrick M. Connors, New York Practice § 347 [6th ed, Dec. 2024 update].) The majority of cases that address "attorney work product" are primarily focused on what constitutes "attorney work product," i.e., whether the item or items sought are "are uniquely the product of an attorney's learning and professional skills." (Matter of Pretino, 150 Misc 2d 371, 373 [Sur Ct, Nassau County 1991]; see Hoffman v Ro-San Manor, 73 AD2d 207, 211 [1st Dept 1980] ["The exemption should be limited to those materials which are uniquely the product of a lawyer's learning and professional skills, such as materials which reflect his legal research, analysis, conclusions, legal theory or strategy"].) Although courts have held that what constitutes attorney work product should be narrowly construed (Zimmerman v Nassau Hosp., 76 AD2d 921, 922 [2d Dept 1980]),[FN4]
if what is being described as attorney work product really is attorney work product and not something else, protection is absolute. (Don v Singer, 19 Misc 3d 1139[A] *3, 2008 NY Slip Op 51071 [U] [Sup Ct, NY County 2008] ["An attorney's work product is entitled to absolute immunity"].) Further, the protection afforded to attorney work product is not limited to the litigation for which the attorney prepared the materials but will continue to apply in any later legal proceeding. (Kinge v State of New York, 302 AD2d 667, 670 [3d Dept 2003]; Corcoran v Peat, Marwick, Mitchell & Co., 151 AD2d 443, 445 [1st Dept 1989].)
This is distinct from CPLR § 3101 (d) (2), which provides only conditional protection from disclosure for materials that were prepared in anticipation of litigation. (Hoffman v Ro-San Manor, 73 AD2d 207, 211 [1st Dept 1980] [Under CPLR § 3101, attorney work product and material prepared for litigation are not synonymous].)[FN5]
Materials prepared in anticipation of litigation may be obtained where the party seeking the materials has a "substantial need" for the [*7]materials and they cannot obtain the materials in some other manner "without undue hardship." (CPLR § 3101 [d] [2]; see New York Schools Ins. Reciprocal v Milburn Sales Co., Inc., 105 AD3d 716, 717 [2d Dept 2013].) Even where a party is able to make such a showing, § 3101 (d) (2) makes clear that "the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." Defendant's arguments concerning the work product doctrine conflate CPLR § 3101 (c) and CPLR § 3101 (d) (2) and ignore the responsibility of the Court outlined in § 3101 (d) (2) to protect against disclosure of attorney work product. (NYSCEF Doc. No. 55 at 2, ¶ 3.) Indeed, defendant only cites to CPLR § 3101 (d) in its submissions. (Id.)
To the extent that defendant has argued that the privilege afforded under CPLR 3101 (c) has been waived, the Court is not persuaded. Although courts have found limited circumstances under which a party has waived the attorney work product privilege, none is applicable here. For example, defendant raises "at issue" waiver in its sword/shield argument. However, the "at- issue" waiver is only relevant where a party has affirmatively placed the subject matter of its own work product at issue. (See G.D. Searle & Co. v Pennie & Edmonds, 308 AD2d 404, 404 [1st Dept 2003] [allegations of attorney misconduct placed protected work product "at issue"]; Goldberg v Hirschberg, 10 Misc 3d 292, 299 [Sup Ct, NY County 2005] [plaintiff seeking damages in the amount of legal fees paid for bad advice received from counsel placed protected work product "at issue"].) It is simply not the case here that claimant has put the protected work product "at issue" in his claim.
Courts have also found waiver of work product privilege where work product was disclosed to a third party and there was "a likelihood that the material [would] be revealed to an adversary, under conditions that are inconsistent with a desire to maintain confidentiality." (Bluebird Partners v First Fid. Bank, N.J., 248 AD2d 219, 225 [1st Dept 1998], lv dismissed 92 NY2d 946 [1998].) Here, claimant shared the document with his father and his father shared it with a witness. Neither of them shared it with an adversary. It is therefore difficult to conclude that claimant would foresee that his adversary would likely gain access to it. (Matter of Pretino, 150 Misc 2d 371, 374 [Sur Ct, Nassau County 1991] [to constitute a waiver, disclosure must be inconsistent with maintaining secrecy as against an adversary and it must significantly increase the possibility that the opposing party will obtain the information] [emphasis added].)
As discussed above, having reviewed the letter, the Court has found that it is, without question, attorney work product. Under CPLR § 3101 (c), attorney work product is subject to absolute privilege. Unless the attorney work product was shared by claimant voluntarily and intentionally with his adversary, it is entitled to absolute immunity. (Charter One Bank v Midtown Rochester, 191 Misc 2d 154, 161 [Sup Ct, Monroe County 2002].) The document here was not shared voluntarily or intentionally with an adversary.
Moreover, even if defendant had persuasively argued that KCDAO's possession of the document reflected that it had been "voluntarily and intentionally shared" with KCDAO by the claimant or his counsel, KCDAO is precluded by CPLR § 4503 (a) (1) from sharing it with the defendant. ("Evidence of [privileged] communication obtained by any [state, municipal or local governmental agency], and evidence resulting therefrom, shall not be disclosed by any state, [*8]municipal or local governmental agency . . . .")[FN6]
And indeed, pursuant to the same section of the CPLR, Mr. Perkins cannot be compelled by defendant "to disclose such communication, in any action, disciplinary trial or hearing . . . conducted by or on behalf of any state, municipal or local governmental agency . . . " (Id.) The Court therefore finds that the documents demanded should be protected from production.
3) Claimant's Redaction of the Documents
Finally, the Court will address defendant's assertion that claimant's counsel had "no authority to conduct his own redactions to those documents . . . ." (NYSCEF DOC. No. 45 at 20, Ex. 2, September 11, 2024 correspondence from defendant to Court.) With this the Court agrees. Although the Court disagrees that claimant was instead required to disclose the files in their entirety, including the privileged communication, claimant's counsel should not have engaged in self-help here. The appropriate course of action would have been to seek a protective order for the privileged communication.[FN7]

Conclusion
The Court finds that the documents defendant seeks constitute attorney work product. Although the attorney-client privilege was waived when claimant's father shared the letter, the attorney work product doctrine entitles this document to protection from disclosure. (Matter of Pretino, 150 Misc 2d 371, 373 [Sur Ct, Nassau County 1991] ["Work product is a separate and distinct source of immunity from the attorney-client privilege and waiver of the attorney-client privilege does not necessarily result in waiver of the protection afforded under the work product category"].) In addition, KCDAO is prohibited from sharing the document and the State is precluded from compelling it.
Therefore,
WHEREAS, the defendant has failed to show cause why the claimant should be compelled to produce the eight documents in dispute; and
WHEREAS, the claimant did show cause why the eight documents demanded by the defendant are protected from production;
NOW, upon the Order to Show Cause (M-101344) it is
ORDERED, that pursuant to CPLR § 3103 (a), the eight documents that contain the three-paragraph portion of the letter from Mr. Rudin to Mr. Perkins that appear in KCDAO's production shall remain redacted in order to properly safeguard the attorney work product.
Dated: December 17, 2024
New York, New York
SETH M. MARNIN
Judge of the Court of Claims
The Court read and considered the following papers in rendering its decision regarding this motion:
1. NYSCEF Doc. No. 29, Stipulation and Order Regarding Claimant's Proposed Subpoena to Kings County District Attorney's Office, received 01/03/2024;
2. NYSCEF Doc. No. 30, Judicial Subpoena Duces Tecum, received 01/03/2024;
3. NYSCEF Doc. No. 45, Affirmation of Joel B. Rudin, Esq. Showing Cause Why Defendant Should Be Prohibited From Obtaining Attorney-Client Communication and Attorney Work Product, with Exhibits 1 through 8, received 10/09/2024;
4. NYSCEF Doc. No. 48, Defendant's Ex. A, received 10/11/2024;
5. NYSCEF Doc. No. 49, Defendant's Ex. B, received 10/11/2024;
6. NYSCEF Doc. No. 52, Amended Affirmation of Defendant Showing Cause To Compel Document Production, received 10/15/2024;
7. NYSCEF Doc. No. 53, Defendant Opposition to Claimant Affirmation Showing Cause for Protective Order, received 10/23/2024;
8. NYSCEF Doc. No. 54, Affirmation of Joel B. Rudin, Esq. Responding to Defendant's Amended Affirmation Seeking Production of Attorney-Client Communication and Attorney Work Product, received 10/23/2024;
9. NYSCEF Doc. No. 55, Reply in Further Support of Defendant Affirmation Showing Cause to Compel Document Production by Antonella Papeleo, Assistant Attorney General, received 11/06/2024;
10. NYSCEF Doc. No. 56, Reply Affirmation of Joel B. Rudin, Esq. Showing Cause Why Defendant Should Be Prohibited From Obtaining Attorney-Client Communication and Attorney Work Product, received 11/06/2024; and
11. NYSCEF Doc. No. 58, portion of letter in dispute authored by Joel B. Rudin, Esq. to Mr. Perkins, submitted to the Court at its request for in camera review, received 11/27/2024.

Footnotes

Footnote 1:The Stipulation and Order was signed by Mr. Loup, Ms. Papaleo, KCDAO's Assistant District Attorney Zachary Sider, and the Court. (NYSCEF Doc. No. 29 at 3.)

Footnote 2:Although the subpoena was obtained by Mr. Loup, the stipulation, signed by Assistant DA Zachary Sider and the parties, states that KCDAO shall provide the requested materials and privilege logs, if any, to "the parties." (NYSCEF Doc. No. 29 at 1 and 2, ¶ 4, 6, and 7.)

Footnote 3:If KCDAO had produced the documents at issue to both parties as directed in the Stipulation and Order, claimant's counsel would have moved for a protective order bringing us to the same place we are today. (See NYSCEF Doc. No. 45 at 16; NYSCEF Doc. No. 54 at 8, ¶ 18.)

Footnote 4:The documents sought in Zimmerman v Nassau Hospital were medical records from treatment that was provided in the presence of an attorney. When the First Department insists that "work product" has been narrowly construed, the Court understands that to mean that the category of what constitutes work product should not be expanded to materials that were not, in fact, prepared by an attorney and not that the protections for actual attorney work product should narrowed or limited.

Footnote 5:This distinction between attorney work product and documents prepared in anticipation of litigation is unique to New York. Other jurisdictions and federal law do not draw the same line. The Court therefore relies solely on decisions from New York State Courts in this section.

Footnote 6:There is no doubt that KCDAO knew the letter was from claimant's counsel. In KCDAO's notes from their interview with the witness who had received the letter from Mr. Mayo, they note parenthetically that the witness showed the prosecutors the letter and "it's from Rudin" (see NYSCEF Doc. No. 45 at 66).

Footnote 7:Although seeking a protective order from the Court would have been the appropriate course of action, failing that, at minimum, claimant should have provided a privilege log when the documents were disclosed as required by CPLR 3122 (b).